### No. 7897.

### State ex rel. Jos. Hernandez vs. Don A. Pardee, Judge, etc.

No provision was specially made by the Constitution of 1879 for the administration of justice in the Sixth and Seventh Municipal Districts of the City of New Orleans, during the interval between the first Monday of April and the first Monday of August 1880.

Therefore, under the provisions of Art. 259 of the same Constitution, and for reasons of public order and of absolute necessity for the administration of justice, the laws, in existence at the time of the adoption of the Constitution, which placed those Sixth and Seventh Municipal Districts under the jurisdiction of the Second Judicial District Court, are still in force in that particular respect, and that Court, so far as those Sixth and Seventh Municipal Districts are concerned, is still in existence, and the Judge presiding over it, still in office. This order of things will remain so until the first Monday of August 1880.

APPLICATION for Writ of Prohibition.

Thos. J. Semmes & Francis B. Lee for Relator.
A. G. Brice for Respondent.

State ex rel. Hernandez vs. Pardee, Judge.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an application for a prohibition to prevent the defendant from acting as District Judge over the Sixth and Seventh Municipal Districts of the parish of Orleans. To the demand a return is duly made.

The constitution of 1868 did not assume to divide the State into judicial districts, but vested the General Assembly with plenary powers to organize the judiciary department for those districts throughout the State, save probably, in the parish of Orleans, for which same district provisions were made.

By an act of 1860 the Second Judicial District had been declared to be composed of the parishes of Plaquemines, St. Bernard, and Jefferson. This law remained unaltered until by subsequent acts portions of the parish of Jefferson, including the town of Carrollton, were detached from it, and annexed as the Sixth and Seventh Municipal Districts to the parish of Orleans. By the act of 1874 the last portion was "to remain and constitute part of the Second Judicial District."

The exercise of such power of dismemberment was expressly recognized by this Court, on good authority, as within the legitimate scope of legislative sovereignty. 29 A. 781.

In 1876 the Legislature passed an act to define and extend the limits of the Second Judicial District. Under its operation the Sixth and Seventh Municipal Districts of the parish of Orleans were taken out of the jurisdiction of the courts for the parish of Orleans, and added to the territorial jurisdiction of the Second Judicial District Court.

In November, 1876, Don A. Pardee was elected Judge of the Second Judicial District, was commissioned, qualified, and entered upon the discharge of his functions. The four years for which he was elected were to expire on November 1st, 1880.

By act 83, of the constitution of 1868, the judicial districts were to remain unchanged for four years when once organized.

In 1877 the Legislature passed an act, No. 85, to repeal the act of 1876, with a clause that it would take effect only at the expiration of the term of the then judge of that court.

The constitution of 1879 next followed. By article 108 the territory over which the Second Judicial District had jurisdiction was cantled ; the parish of Jefferson was annexed to the Twenty-sixth Judicial District, consisting, besides, of the parishes of St. Charles and St. John the Baptist.

The confines of the parish of Orleans, of which the Sixth and Seventh Municipal Districts formed part, remained untouched. Special provisions, found in article 128 and following, were made for the organization of the judiciary within its limits.

At the last general election District Judges were elected to the courts whose jurisdiction extended over the parishes of Plaquemines, and St. Bernard, and, besides, over that of Jefferson.

In the parish of Orleans, five judges were appointed by the Executive to compose the Civil District Court, two to compose the Criminal District Court, two judges were elected by the Legislature to compose a Court of Appeals, and several city judges were elected by the people.

By article 130, § 2, of the constitution of 1879, the Civil District Court of the parish of Orleans was given exclusive and general and probate and exclusive civil jurisdiction over the parish of Orleans in the causes mentioned, and provision was made for the jurisdiction of the Criminal District Court.

By article 264 it was declared that all officers, whose election or appointment is provided by that constitution, should enter into office on the first Monday of April, 1880, after compliance with legal requirements.

By article 266 the judicial officers appointed or elected for the parish of Orleans were not to enter upon their functions until the first Monday of August, 1880, and the incumbents in office were to continue until then in the performance of their duties.

It is manifest from this statement, which is exact and full, that no provision was specially made by the constitution for the administration of justice in the Sixth and Seventh Municipal Districts between the first Monday of April and the first Monday of August, 1880.

Were it not for the salutary provisions of article 259, which were wisely intended to guard against any disturbance of the equilibrium of the government, the result would have been an *interregnum*, fraught with all its horrible attending consequences, anarchy and confusion, and a complete emancipation of persons within those two municipal districts from all civil actions and criminal prosecution, and all other governmental restraints.

That article provides:

"In order that no inconvenience may result to the public service from the taking effect of this constitution, no office shall be suspended thereby, but the laws of the State relative to the duties of the several officers, Executive, Judicial, and Military, shall remain in full force, though the same be contrary to this constitution, and the several duties shall be performed by the respective officers of the State, according to existing laws, until the *organization* of the government under this constitution, and the entering into office of the *new* officers to be appointed or elected under said government, and no longer."

The territory of the Second Judicial District, as it existed under the

constitution of 1868, was cantled by the constitution of 1879, but the parish of Orleans was not dismembered.

The District Judges elected for the Twenty-fourth and Twenty-sixth Judicial Districts were qualified. The moment that the Second Judicial Court, which had jurisdiction over the territory falling under their jurisdiction, ceased to exist *quoad* the detached territory, i. e. the first Monday of April, 1880, those judges were qualified to enter upon their respective duties. Their courts were not courts succeeding the Second Judicial District Court; they were not judges succeeding the Judge of the Second Judicial District. Their courts were new courts ; they were new judges with different territorial jurisdiction, with different attributions and powers. There was to be no new court, no new judge to exercise jurisdiction over the Sixth and Seventh Municipal Districts of the parish of Orleans after the first Monday of April, 1880. The courts previously organized were to cease to exist on that day, *provided* there was a valid or sufficient judicial power to be exercised at the time of their extinction and competent to replace them, practically.

It is upon this principle, which is based on considerations of political economy of the highest order, which imperiously require in every well-organized government a judicial power for the administration of justice, and without which society is impossible, that the case of the State ex rel. Cheevers vs. Duffel, just decided, was made to rest.

As there was no provision by the constitution of 1879 for the exercise of a competent judicial authority within the circumscription of the Sixth and Seventh Municipal Districts of the parish of Orleans, for the period between the first Monday of April and first Monday of August, 1880, it follows, *ex necessitate*, that the District Court and the judge thereof, that had jurisdiction prior to the first Monday of April, 1880, over those municipal districts, have continued to exist, and will so continue until the first Monday of August, 1880, when the Civil District Court for the parish of Orleans will be organized and be put in operation.

If it be true that the Second Judicial District Court, having jurisdiction over the Sixth and Seventh Municipal Districts, absolutely died away on the first Monday of April, it must have been replaced, to that extent, by some judicial authority clothed with even civil and criminal powers.

What is that authority ? Is it the Civil and Criminal District Courts, created by the constitution theoretically in existence, and whose judges are known but powerless ? But those courts are not to go into operation until the first Monday of August next, under the very terms of the constitution. Is it the First District, or the Superior Criminal Courts ? Is it the Second, Third, Fourth, Fifth, and Sixth District Courts for the parish of Orleans ? Where, if so, is the constitutional

provision which enlarges the jurisdiction which they had prior to the first Monday of April, so as to include within their territorial limits the Sixth and Seventh Municipal Districts? Which of those courts having concurrent jurisdiction could assume to proceed with the causes pending in the previous courts? Those questions cannot be solved in the sense contended for by the relator, unless the judiciary arrogates to itself the power of legislation, a thing which it has neither the right nor the will to do.

It is not possible to construe legally, not even plausibly, the act of 1877, so as, under its language, to abridge the term of office of the defendant. The Legislature intended that the act should not go into effect until the term, for which the incumbent was elected, has expired, that is in November, 1880 (29 A. 783); but what the Legislature could not in the contraction of its powers do, had it intended to do, the Convention could do, and has done, by shortening the term to the first Monday of August, 1880.

In 1812 a question somewhat similar to the one which has just engaged our attention was elaborated by the members of the Superior Court of the State, among whom were Judges Martin and Mathews, in a letter to the Senate upon their rights to act as the judges of the State. They had previously been judges of the Superior Court of the Territory of Orleans, and they claimed to hold over and continue in office as judges of the Superior Court of the State. Their letter is reported in 3d Martin, p. 1, and well deserves the attention of the Bench and the Bar.

As they then said, we now say:

" Wisdom is to be presumed in the Convention, and wisdom directs the means adequate to the end.

" The end was to prevent inconveniences as might arise from the change of government."

In furtherance, therefore, of the wise regulations of article 259, we now declare that the District Court, which was known as the District Court for the Second Judicial District, though defunct, *eo nomine,* as concerns the parishes of Plaquemines, St. Bernard, and Jefferson, is still a District Court, having the same civil and criminal jurisdiction as it had previously over the Sixth and Seventh Municipal Districts of the parish of Orleans, that the defendant is still the Judge thereof, is clothed with the same powers as heretofore, and that both will continue to be until the first Monday of August, 1880, when the Civil and Criminal District Courts for the parish of Orleans will be organized and put in motion.

It is utterly impossible to arrive at a different conclusion, without provoking a total disruption of the functions of all government in those

Municipal Districts, and without sanctioning consequent cataclysm with the high authority of this Court.

Before such frightful result we necessarily do stand aghast, and rule as we consider it is our solemn duty to do.

It is therefore ordered that the application for a prohibition herein be rejected with costs.